[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Aaron B. was born on November 1993, to Meredith L., and Timothy B.
Aaron is the subject of a neglect petition filed by the Commissioner of the Department of Children and Families (the "department") on April 1, 2002, on which date the department was given an order of temporary custody. Service was confirmed, parents were appointed counsel, and the matter proceeded to trial in the Child Protection Session, which has jurisdiction.
On the first day of trial, the department, by agreement, amended its petition to allege that Aaron was uncared for with specialized needs. Mother admitted the allegation, and the non-custodial father stood mute. The following morning at the commencement of the second day of the dispositional hearing, mother, without objection, withdrew her plea. The case, therefore, continued contested as to adjudication and, if adjudicated, disposition.
The court, having considered all the evidence, including the testimony of six witnesses, including mother, finds the following by fair preponderance of the evidence.
On February 19, 2002, Gerald Hetu, an investigative worker for the department was assigned to Aaron's case. Aaron at that time was in-patient at Hartford's Institute of Living (the "Institute") due to a voluntary admission by mother, his custodial parent. Aaron was admitted with suicidal ideations, following a report of allegations by Aaron's younger sister that he had sexually molested and physically threatened her. Aaron's mother, and her male partner, Philip, told Institute staff that Aaron was hearing voices, and that he recently had taken a butcher knife and threatened harm to himself. They also provided the Institute with a lengthy statement of sex abuse of his sister by Aaron allegedly made to them by the sister. CT Page 1404
The Institute quickly stabilized Aaron. They observed no sexual issues, and found he was not a threat to others. Three separate psychiatrists at the Institute, however, did find Aaron was suffering from depression, and that it was untreated while at home. After approximately ten days, the Institute felt Aaron was ready for discharge home, provided he was treated with a prescription anti-depressant and provided intensive out-patient care, commencing with a partial hospitalization program. Mother and Philip refused, insisting that Aaron needed residential placement. Aaron remained in treatment in-patient at the Institute for two months until the Department was called in due to mother's refusal to cooperate with the Institute's discharge plan, at which time the Department obtained an order of temporary custody.
Jan Tesini, a clinical social worker at the Institute testified credibly as to Aaron's diagnosis of depression, made by three separate psychiatrists, and the inability and unwillingness of Aaron's custodial family to meet his needs. Aaron was uncared for with specialized needs as of April 1, 2002 and as of September 23, 2002.
What followed, and immediately preceded, the department's involvement is disturbing, when considered for dispositional purposes.
Aaron is an intelligent, academically engaged young man who loves to read, enjoys school and disputation, and loves his family. Mother and Philip took away his books as a form of punishment, and then withdrew him from school, with no approved home school program in place and put into effect. They advised the Institute that Aaron was not welcome home and that they would not authorize the use of medications. Most significantly, since April 1, 2002, when the department obtained its orders of temporary custody, mother visited Aaron only once at the department in April. Since then, she has refused to visit. The department has offered transportation to mother. The foster mother has been liberal and flexible in her offers of visitation. Aaron's desperate (emphasis added) desire to see mother has been communicated to mother regularly by the department. Mother acknowledged on the witness stand that Aaron wanted to see her. She refused to visit while the department is involved, even rejecting the offer of visits supervised by an independent agency. Aaron, on his part wishes to have no contact with Philip.
Aaron has expressed an intense dislike for and distrust of Philip, to the limited extent Aaron is willing to discuss his home. Aaron loves his mother, but can not understand why she chooses to continue with Philip as a part of the family.
What is clear is that mother has chosen Philip over Aaron, to the CT Page 1405 detriment of her son.
Aaron has done well in foster care. He is in a stable, supportive home. He has been seen by a fourth psychiatrist, who has prescribed Paxil and therapy, with both of which Aaron is compliant. He is less anxious, more open, more disciplined in his personal behaviors, and re-enrolled in school.
An individual evaluation of father and son, as well a parent-child interactional, was done by Dr. Randall, an independent court evaluator. She found that their relationship was comfortable, and that placement with father could be a future possibility, a position with which father agrees. Dr. Randall could not evaluate mother or Philip as they failed to appear, without notice or explanation.
Mother professed that she loved her son and that she wanted to help him, but only on her or Philip's terms, which meant no involvement with the department. At the same time, mother insisted the child needed residential placement up to the time his custody was transferred to the department, and is not in a position to comment on his current needs as she's made no reasonable effort to acquaint herself with them.
Accordingly, it is hereby ordered that Aaron is committed to the Department of Children and Families until further court order. A motion for permanency plan is due on or before February 25, 2003, and the matter is continued until that date at 9:15 a.m. on the docket of the Waterford Juvenile Court to review said motion.
Specific steps remain as set. If mother wishes to pursue reunification, she is ordered to comply with an individual psychological evaluation with Dr. Randall as well as a parent-child interactional with Aaron for development of more refined specific steps. In light of the commitment to the department, the order of temporary custody is vacated. This matter is returned to the regional court for juvenile matters in Waterford for further proceedings as required by law.
___________________, J. DRISCOLL CT Page 1406